Thomas James PRYOR–EL, Plaintiff,

v.

Sharon Pratt KELLY, et al., Defendants.

Civ. A. No. 95–29 (CRR).

United States District Court,
District of Columbia.

June 27, 1995.

Thomas James Pryor–El, pro se.

Jacques P. Lerner, Asst. Corp. Counsel for District of Columbia, Correctional Litigation Section, with whom Richard S. Love, Asst. Corp. Counsel, Chief, Correctional Litigation Section, and Garland Pinkston, Acting Corp. Counsel, were on the brief for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before the Court in the above-entitled case is the Defendants' Motion to Dismiss, or in the alternative for Summary Judgment ("Defendants' Motion"), and the Plaintiff's Opposition thereto. Upon careful consideration of the parties' pleadings and the applicable law with respect thereto, the Court shall GRANT the Defendants' Motion to Dismiss.

### I. BACKGROUND

Plaintiff, an inmate incarcerated at the Medium Security Facility of the Lorton Correctional Complex, brings the above-entitled cause of action *pro se* and *in forma pauperis* alleging that the Defendants have violated his constitutional rights in addition to District of Columbia law. Plaintiff asserts five discrete claims.[1]

First, Plaintiff alleges that the Defendants' actions have exposed him to unreasonable levels of Environmental Tobacco Smoke

---

1. Plaintiff originally filed four separate actions, Civil Action Nos. 94–2490, 94–2558, 94–2770, and 95–29, which were consolidated, pursuant to FED.R.CIV.P. 42(a) into Civil Action No. 95–29 by Order of the Court on January 19, 1995.

("ETS") in violation of the Eighth Amendment bar against cruel and unusual punishment and District of Columbia law. Second, Plaintiff alleges that he was denied his Due Process rights when certain personal property of his was shipped to his home at his expense by prison officials, who, in turn, allegedly failed to provide him with an inventory of the items shipped. Plaintiff also contends that these actions violated District of Columbia law. Third, Plaintiff alleges that he has been denied an opportunity to participate in a drug treatment program in violation of the Equal Protection Clause. Fourth, Plaintiff claims that the Defendants retaliated against him because he has filed the instant Complaints by allegedly refusing to enroll him in the drug program, process his inmate grievance form properly, or transfer him to a minimum security facility. Fifth, Plaintiff claims that he was denied his Due Process rights when the Defendants allegedly failed to process his inmate grievances.

## II. DISCUSSION

### A. Plaintiff Fails to State a Claim upon which Relief can be Granted.

 For the purposes of a motion to dismiss for failure to state a claim upon which relief can be granted, all factual allegations contained in the complaint are assumed to be true, and all doubts and ambiguities are to be resolved in the complainant's favor. *Doe v. United States Dep't of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985). Moreover, a *pro se* complaint must be liberally construed, granting the complainant "the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979) (quoting *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969)). A *pro se* complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *see also Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980).

### 1. Plaintiff's Environmental Tobacco Smoke Claim.

Plaintiff alleges that, while housed at Unit 4–C of the Medium Security Facility, he was exposed to unreasonably high levels of environmental tobacco smoke (ETS), in violation of the Eighth Amendment and D.C.Code §§ 7–100 and 8–262 [sic]. Complaint 94–2490. Plaintiff seeks declaratory and injunctive relief, $80,000 in compensatory damages, $40,000 in punitive damages against each of the Defendants, and free medical treatment for the rest of his life. *Id.* Because Plaintiff fails to state a cognizable Eighth Amendment claim, and because the Court declines to exercise its supplemental jurisdiction over Plaintiff's claims under District of Columbia law, the Court will dismiss Plaintiff's claim regarding his alleged exposure to ETS.

 To state a claim under the Eighth Amendment that the right to be free from cruel and unusual punishment has been violated, an inmate complaining of prison conditions must allege facts that, if true, would satisfy both prongs of a bifurcated test. First, a plaintiff must allege that, objectively, conditions are or were serious enough to be considered cruel and unusual. *Wilson v. Seiter,* 501 U.S. 294, 298–99, 111 S.Ct. 2321, 2323–25, 115 L.Ed.2d 271 (1991). Second, from a subjective point of view, the plaintiff must allege that the defendants acted with a sufficiently culpable state of mind. *Id.*

The Supreme Court analyzed an ETS claim under the Eighth Amendment in a case where an inmate brought a section 1983 action against prison officials challenging his placement with an inmate who smoked five packs of cigarettes per day. *Helling v. McKinney,* 509 U.S. ——, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). The inmate claimed that involuntary exposure to his cell mate's ETS created an unreasonable risk to his health, thus subjecting him to cruel and unusual punishment by jeopardizing his health. *Id.*

The Supreme Court declared that the objective component of an Eighth Amendment claim based upon exposure to ETS is satisfied if (1) the prisoner is being exposed to unreasonably high levels of ETS; (2) scientific and statistical evidence establishes a likelihood that an injury to the prisoner's health

will be caused by the exposure; and (3) the risk of harm is so grave that it "violates contemporary standards of decency to expose anyone to such a risk." *Helling,* 509 U.S. at ——, 113 S.Ct. at 2482.

■ With regard to the subjective component of an Eighth Amendment claim, the Supreme Court observed that the prison officials' attitudes and conduct must evince "deliberate indifference" to the unreasonable risk posed by the inmate's exposure to ETS. *Id.* "Deliberate indifference" is the equivalent of subjective recklessness, conscious disregard of a substantial risk of serious harm. *Farmer v. Brennan,* —— U.S. ——, ——– ——, 114 S.Ct. 1970, 1979–80, 128 L.Ed.2d 811 (1994). Accordingly, a prison official must actually know of and disregard an excessive risk to inmate health or safety. *Id.,* —— U.S. at ——– ——, ——, 114 S.Ct. at 1980–82, 1984. The *Helling* Court noted that the plaintiff's ability to offer such proof on remand would be questionable given that the prison officials had since adopted a formal smoking policy. *Helling,* 509 U.S. at ——, 113 S.Ct. at 2482.

■ Plaintiff in the instant case fails to satisfy the objective prong of a cognizable Eighth Amendment claim. While Plaintiff states in conclusory terms that he has been exposed to "unreasonably high levels of environmental tobacco smoke [which cause him to] suffer[ ] from certain health ailments [and] which seriously threaten his future health," Complaint 94–2490 at ¶ 15, Plaintiff does not present any scientific or statistical evidence establishing a likelihood that an injury to his health will be caused by the exposure nor does he allege that the risk of harm is so grave that it "violates contemporary standards of decency to expose anyone to such a risk" or assert any factual allegations from which the Court could draw such a conclusion. *Helling,* 509 U.S. at ——, 113 S.Ct. at 2482; *see* Note, *Second Hand Smoke as Cruel and Unusual Punishment:* Helling v. McKinney: *The Insurmountable Burden of Proof and the Role of the Court,* 3 GEO. MASON IND.L.REV. 257, 272–78 (1994) (arguing that *Helling* imposes a standard of proof that is insurmountable because of the inherent scientific uncertainties surrounding ETS and causation).

Further, the facts of the present case are distinguishable from those in *Helling.* While the plaintiff in *Helling* was exposed to ETS constantly due to his involuntary placement with a cell mate who smoked five packs of cigarettes per day, Plaintiff does not allege any constant exposure to ETS and none of the allegations in the Complaint concern his cell. Rather, Plaintiff alleges only that various unnamed inmates and prison officials smoke "in the TV room, games room, and the letter writing room." Complaint 94–2490 at ¶ 17. These allegations do not objectively state an Eighth Amendment claim upon which relief can be granted. *See McNeil v. Lane,* 16 F.3d 123, 125 (7th Cir.1993) (inmate allegations of exposure to asbestos-covered pipes directly outside his cell for period over ten months did not state a cognizable Eighth Amendment claim; complaint did not allege facts sufficient to establish that he was exposed to unreasonably high levels of asbestos).

Plaintiff's Complaint also fails to satisfy the subjective prong of a cognizable Eighth Amendment claim—that the attitudes and conduct of officials evince "deliberate indifference" to the unreasonable risk to inmate health or safety. Plaintiff faces the difficulty in proving "deliberate indifference" noted in *Helling* because the Medium Security Facility in which Plaintiff is housed has implemented District of Columbia Department of Corrections Order 6060.1, and has promulgated Medium Security Facility Division Operations Procedure ("DOP") 6060.1 to regulate smoking at the facility.[2] *See* Defen-

---

**2.** DOP 6060.1 states that "[s]moking is prohibited in all buildings of the Medium Security Facility except as specifically authorized by this directive." DOP 6060.1 ¶ VI.(A). Pursuant to the DOP, smoking is limited to individual rooms that are designated for smoking. These designated smoking areas are separated by a physical barrier or a separate room to minimize smoke in nonsmoking areas. *Id.* There are signs reading "No Smoking under Penalty of Law, Violators Subject to a $300 Fine" displayed throughout the facility. *See* Declaration of Defendant Warden Krull ("Krull Decl.") at ¶ 4. Prisoners who smoke in non-smoking locations are subject to disciplinary action under the Lorton Regulations Approval Act of 1982 ("LRAA"), 28 DCMR

dants' Motion in 94–2770 (filed Jan. 10, 1995) at Exh. 1, 2.

Plaintiff asserts that the "defendants ... acted with a sufficiently culpable state of mind." Complaint 94–2490 at ¶¶ 20, 21. He alleges that certain of the Defendants have failed to enforce the smoking restrictions and he submits seventeen affidavits by other inmates to that effect. Complaint 94–2490 at ¶¶ 13, 14, 17, Attachments. However, these conclusory statements and vague allegations do not establish that the Defendants acted with a sufficiently culpable state of mind. *See Helling*, 509 U.S. at ——, 113 S.Ct. at 2480. That the restrictions are not being fully enforced is not enough to establish deliberate indifference. *See Whitley v. Albers*, 475 U.S. 312, 318, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986) (obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by Eighth Amendment).

■ To state a claim under the Eighth Amendment, Plaintiff must, at minimum, allege facts sufficient to establish that the Defendants possessed a total unconcern for his welfare in the face of serious risks. *See Helling*, 509 U.S. at ——–——, 113 S.Ct. at 2481–82. Plaintiff's Complaint falls short of that standard. *Cf. Beauchamp v. Sullivan*, 21 F.3d 789, 790 (7th Cir.1994) (opining that prison officials unlikely to be violating Constitution by forbidding smoking within prison buildings but allowing smoking in outdoor recreation areas). Accordingly, because Plaintiff fails to satisfy the bifurcated test necessary to state a cognizable claim under the Eighth Amendment for cruel and unusual punishment, the Court will GRANT the Defendants' Motion to Dismiss that claim.

■ In addition to the alleged violation of the Eighth Amendment, Plaintiff claims that the Defendants violated District of Columbia law. With regard to the alleged ETS violation, Plaintiff seeks relief under D.C.Code. §§ 7–100 and 8–262 [sic]. Complaint 94–2490 at ¶¶ 21–22. Because Plaintiff's claims are more appropriately pursued in the Dis-

trict of Columbia Superior Court, and because the Court will dismiss the claims over which the Court had original jurisdiction, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... (3) the district court has dismissed all claims over which it had original jurisdiction"); *see Fields v. District of Columbia Dep't of Corrections*, 789 F.Supp. 20, 23 (D.D.C.1992) (declining to retain pendent jurisdiction or to issue a declaratory judgment regarding pendent claim under D.C.Code § 24–442); *Charles v. Kelly*, 790 F.Supp. 344, 349 (D.D.C.1992) (same); *Smith–Bey v. District of Columbia*, 546 F.Supp. 813, 814 (D.D.C.1982) (same). Plaintiff's claims under District of Columbia law regarding his alleged exposure to ETS shall accordingly be DISMISSED, WITHOUT PREJUDICE to refiling in the District of Columbia Superior Court.

**2. The Decision by Prison Officials to Ship Plaintiff's Personal Property to Plaintiff's Home and their Alleged Refusal to Provide him with an Inventory List Therefor.**

Plaintiff alleges that on or about July 19, 1994, prison officials removed all of his personal property from his cell and shipped it to his home, at his expense and without a hearing. Complaint 94–2558; Complaint 94–2770. He claims that, despite his request for an inventory list of the property shipped, none was provided. Complaint 94–2770 at ¶¶ 13, 14, and 19. Plaintiff alleges that these actions violated his Equal Protection, Due Process, and Eighth Amendment rights. Complaint 94–2558 at ¶¶ 59–62; Complaint 94–2770 at ¶ 28. Plaintiff also alleges that the Defendants violated D.C. law and regulations of the D.C. Department of Corrections with respect to the decision by prison officials to ship Plaintiff's personal property to his home and the alleged failure to provide

§§ 500 *et al.*, for abuse of privileges (§ 504.4). *Id.* Corrections staff are not permitted to smoke inside, even in offices, and are subject to fine for doing so. *Id.* at ¶ 5. Further, the Warden designated Dormitory Two as a totally smoke-free dorm as of January 17, 1995. *Id.* at ¶ 5. Non-smoking prisoners may be moved to that dorm at their request. *Id.*

an inventory list. Complaint 94–2558 at ¶¶ 63–66.

The facts leading up to the shipment of Plaintiff's property are straightforward. Plaintiff worked on a canteen truck at the Lorton Facility. Complaint 94–2558 at ¶ 17. On July 15, 1995, a memorandum was sent from Defendant Gadikian, a unit manager at the Lorton Facility, to Defendant Giles, a deputy warden, disclosing that a reliable anonymous source had informed Gadikian that Plaintiff was stealing goods from the truck and reselling them to inmates. *See* Defendants' Motion at Exh. 4. On July 19, 1994, the Program Review board recommended that the contents of Plaintiff's locker be inventoried and excess property shipped home. *See* Defendants' Motion at Exh. 5. Plaintiff acknowledged the recommendation and thereafter his excess property was shipped home. *Id.* He was billed $74.30 for the shipment. Complaint 94–2558 at ¶ 52; Complaint 94–2770 at ¶ 7.

### a. Plaintiff's Equal Protection Claim

Plaintiff claims that his rights under the Equal Protection Clause were violated when he was allegedly singled out for harsher treatment than that accorded similarly situated prisoners in that "he was not allowed to keep the amount of property that all prisoners can have." *See* Complaint 94–2558 at ¶¶ 59–60. Because Plaintiff does not set forth any cognizable claim under the Equal Protection Clause the Court will GRANT the Defendants' Motion to Dismiss Plaintiff's claim thereunder.

Essentially mandating "that all persons similarly situated should be treated alike," *Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985), the Equal Protection Clause "forbids the establishment of laws which arbitrarily and unreasonably create dissimilar classifications of individuals when, looking to the purpose of those laws, such individuals are similarly situated." *Williams v. Field,* 416 F.2d 483, 486 (9th Cir.1969); *see also Muckway v. Craft,* 789 F.2d 517, 519 (7th Cir.1986) ("The equal protection clause 'protects against intentional invidious discrimination by the state against persons similarly situated.'" (quoting *Ciechon v. City of*

*Chicago,* 686 F.2d 511 (7th Cir.1982))). It also forbids unequal enforcement of valid laws, where such unequal enforcement is the product of improper motive. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *see also Muckway,* 789 F.2d at 519–20 ("A law making no impermissible classification (a facially neutral statute) may violate the equal protection clause if it is applied in such a way to create an impermissible classification.").

The Equal Protection Clause therefore demands that the government "apply its laws in a rational and nonarbitrary way; the unequal application of a law, fair on its face, may act as a denial of equal protection." *Brandon v. District of Columbia Bd. of Parole,* 823 F.2d 644, 650 (D.C.Cir.1987) (citing *Yick Wo,* 118 U.S. at 373–74, 6 S.Ct. at 1072–73; *Zeigler v. Jackson,* 638 F.2d 776, 779 (5th Cir.1981))). However, "the conscious exercise of some selectivity in enforcement is not itself a federal constitutional violation." *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962); *see also Brandon,* 823 F.2d at 650 ("[N]ot every divergence in the application [of] a law gives rise to an equal protection claim." (citing *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944))).

Rather, "[t]he unlawful administration by [government] officers of a [law] fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is . . . a denial of equal protection [only if] there is shown to be present in it an element of intentional or purposeful discrimination." *Snowden,* 321 U.S. at 8, 64 S.Ct. at 397; *see also Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir.1982) (same); *Williams,* 416 F.2d at 486 ("In the factual surroundings of a prison it is thus necessary to show a bad faith oppressive motive in order to make a violation of the equal protection clause out of an isolated instance of failure to protect a prisoner from attack by a fellow inmate.").

A prisoner must establish two necessary predicates, therefore, to maintain a claim for a denial of equal protection absent allegations that he or she is a member of a

suspect class. First, the prisoner must establish that he or she was treated differently than other prisoners in his or her circumstances. *Brandon,* 823 F.2d at 650. Second, he or she must establish that such unequal treatment was the result of intentional or purposeful discrimination. *Id.* at 650–51. Even if the prisoner can make this threshold showing, ordinarily only rational basis review is warranted. *Id.* at 650 ("[W]here ... no suspect class or fundamental right is implicated, the government may avoid violating equal protection principles if it can demonstrate that its reasons for treating an individual differently bear some rational relationship to a legitimate state purpose."); *see Thornton v. Hunt,* 852 F.2d 526 (11th Cir. 1988) (Penal statute, which denied good time accumulation for prisoners sentenced to more than ten years, did not single out any suspect class or impinge on any fundamental right, and accordingly would be upheld from equal protection challenge as long as it was rationally related to legitimate governmental purpose).

Plaintiff's claim that his equal protection rights were violated when he was allegedly singled out for harsher treatment than that accorded similarly situated prisoners in that "he was not allowed to keep the amount of property that all prisoners can have," *see* Complaint 94–2558 at ¶¶ 59–60, fails to meet either of the necessary predicates for stating a cognizable claim under the Equal Protection Clause. Plaintiff only baldly asserts that he was treated differently than other prisoners in his circumstances. Further, Plaintiff does not claim that the alleged selective enforcement of prison regulations regarding excess property was the result of a constitutionally impermissible motive. To the contrary, the circumstances surrounding the shipment of Plaintiff's property home indicate that the Defendants' actions had a rational basis. *Cf. Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir.1995) (per curiam) (extended lockdown for nearly four years of prison inmate who was member of racial minority, while similarly situated white prisoners were released, did not violate inmate's equal protection rights, given complete lack of evidence, other than inmate's own personal beliefs, that his extended lockdown was ra-

cially motivated; prison officials justified lockdown based on seriousness of inmate's conduct in writing threatening letters to persons outside prison and forging name of another prisoner).

■ The Court need not accept legal conclusions cast in the form of factual allegations. *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). Accordingly, because Plaintiff fails to articulate a cognizable claim under the Equal Protection Clause the Court will GRANT the Defendants' Motion to Dismiss Plaintiff's claims thereunder regarding the shipment of his excess property to his home.

### b. Plaintiff's Due Process Claim

■ Plaintiff claims that the shipment of his property home at his expense constituted disciplinary action for his alleged theft of items from the canteen truck, and that the failure to provide him with a disciplinary hearing and the procedural rights attaching thereto violated his rights under the Due Process Clause. *See* Complaint 94–2558 at ¶¶ 57–58; *see also* Complaint 94–2770 at ¶¶ 27–28. Plaintiff further claims that the refusal to provide a copy of the inventory list so that he could "properly address the court" constituted a violation of his due process rights. Complaint 94–2770 at ¶¶ 27–28. Because Plaintiff fails to state a claim upon which relief can be granted, the court will GRANT the Defendants' Motion to Dismiss Plaintiff's claims under the Due Process Clause regarding the shipment of his property home and the alleged failure to provide him a receipt therefor.

■ Consonant with approach sanctioned in *Hewitt v. Helms,* 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983), Plaintiff claims that the language of the pertinent regulations is mandatory in nature, mandating both a disciplinary hearing prior to the shipment of his personal effects and a receipt therefor. However, as the Supreme Court recently made clear in *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), while such language may create interests which are protected by the Due Process Clause, "these interests will be generally lim-

ited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at ——, 115 S.Ct. at 2293; *see also Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected are within the sentence imposed on him [or her] and are not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.").

As the Court noted in *Sandin,* the methodology used in *Hewitt* has unduly shifted the focus of the protected interest inquiry from one based upon the nature of the deprivation to one based upon language of a particular statute. *Sandin v. Conner,* —— U.S. at ——, 115 S.Ct. at 2295 (1995). This approach has "encouraged prisoners to comb regulations in search of mandatory regulations on which to base entitlements to various state privileges," *id.,* created "disincentives for States to codify prison management procedures in the interest of uniform treatment," *id.* at ——, 115 S.Ct. at 2293, and "led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Id.*

▇▇▇▇ As a threshold matter, courts are directed to determine whether the "conditions suffered were expected within the contour of the actual sentence imposed." *Id.* at —— n. 9, 115 S.Ct. at 2301 n. 9. Thus, "a state does not violate an individual's federal constitutional right to procedural due process merely by deviating from its own established procedures." *Brandon,* 823 F.2d at 649.

It is undisputed that Plaintiff's property was in excess of that allowed under the pertinent regulations. *See* Complaint 94–2558 at ¶¶ 57–58; Complaint 94–2770 at ¶¶ 27–28; Defendants' Motion at 10. Under Departmental Order No. 4050.1A, canteen items are limited and items of personal property are not "permitted to accumulate to the extent they become a fire, sanitation, security or housekeeping hazard." D.O. No. 4050.1A (Feb. 23, 1979). The decision, therefore, to enforce the regulation, notwithstanding the proximity of the decision to the Plaintiff's alleged theft of items from the canteen truck, was an administrative one to which none of the procedural protections Plaintiff seeks attaches. Further, the alleged deprivation at issue is insufficient to trigger the protections of the Due Process Clause.

▇▇▇ Where an inmate's personal property is seized and sent to an address of his choosing, such action is not a deprivation. *Williams v. Meese,* 926 F.2d 994, 998 (10th Cir.1991). In *Williams,* the court stated that "[a]lthough plaintiff no longer has possession of the property, he still retains control over it and, therefore, has not been 'deprived' of the property." *Id.* Similarly, in the instant case, Plaintiff still retains control over the property shipped to his home and, therefore, has not been "deprived" of it. *A fortiori,* the actions of the Defendants in shipping the Plaintiff's property and their alleged failure to provide him with a receipt therefor "did not present the type of atypical, significant deprivation in which [the District of Columbia] might conceivably create a liberty interest." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2301. Accordingly, because Plaintiff has not suffered a deprivation sufficient to trigger the protections of the Due Process Clause, he fails to state a claim thereunder. The Court will therefore GRANT the Defendants' Motion to Dismiss Plaintiff's claims regarding the shipment of his property home and the alleged failure of prison officials to provide him with a receipt for such property.

**c. Plaintiff's Eighth Amendment Claim**

▇▇▇ Plaintiff also claims that the Eighth Amendment bar against cruel and unusual punishment was violated when eight of the Defendants allegedly "conspired to deprive [him] of his personal property." Complaint 94–2558 at ¶¶ 61–62. Because Plaintiff fails to state a cognizable claim under the Eighth Amendment, the Court will GRANT the Defendants' Motion to Dismiss Plaintiff's claims thereunder with respect to the shipment of his property home.

As noted above, to state a claim under the Eighth Amendment, Plaintiff must plead sufficient facts to satisfy both an objective and subjective test. To satisfy the objective test the Plaintiff must show that the "deprivation [is] sufficiently serious" to be considered cruel and unusual, and to satisfy the subjective test the Plaintiff must show that the "officials act[ed] with a sufficiently culpable state of mind." *Wilson,* 501 U.S. at 297, 111 S.Ct. at 2324.

The standard of the objective test enunciated by the Supreme Court for prison conditions is that the deprivation deny "the minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). For example, the denial of necessary medical care for a serious medical condition is cruel and unusual because denial of such could result in torture or pain without penological purpose. *See Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). In the instant complaint, Plaintiff alleges only that he was deprived of personal property that other prisoners were allowed. *See* Complaint 94–2558 at ¶ 52. Plaintiff does not allege that he has been denied "the minimal measure of life's necessities," nor has he pleaded facts from which the Court could possibly conclude as much. Thus, Plaintiff does not satisfy the threshold objective showing necessary to state a cognizable claim under the Eighth Amendment.

Neither does Plaintiff satisfy the requisite subjective showing that the Defendants acted with " 'deliberate indifference'." *Wilson,* 501 U.S. at 303, 111 S.Ct. at 2327 (1991) (quoting *LaFaut v. Smith,* 834 F.2d 389, 391–92 (4th Cir.1987)). "Deliberate indifference" is tantamount to recklessness or the conscious disregard of a substantial risk of serious harm. *Farmer,* —— U.S. at —— ——, 114 S.Ct. at 1979–80. Plaintiff makes the conclusory allegation that the Defendants acted with "deliberate indifference." *See* Complaint 94–2558 at ¶ 62. As noted, however, the Court "need not accept the inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the [C]ourt accept legal conclusions cast in the form of factual allega-

tions." *Kowal,* 16 F.3d at 1276. Plaintiff fails to allege sufficient facts that, if true, would evince the Defendants' awareness of a substantial risk of serious harm or their disregard of such a risk. Thus, Plaintiff fails to make the threshold showing necessary to state a cognizable claim under the Eighth Amendment.

Because Plaintiff has not met his threshold burden of adequately pleading the components of a cognizable claim under the Eighth Amendment, he fails to state a claim thereunder for which relief may be granted. Accordingly, the Court will GRANT the Defendants' Motion to Dismiss Plaintiff's claims regarding the decision of prison officials to ship Plaintiff's personal property home.

### d. Plaintiff's Claims under District of Columbia law.

In addition to the above alleged constitutional violations, Plaintiff claims that the Defendants violated District of Columbia law. Plaintiff seeks relief under the District of Columbia Code. Because Plaintiff's claims are more appropriately pursued in the District of Columbia Superior Court, and because the Court will dismiss the claims over which the Court had original jurisdiction, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... (3) the district court has dismissed all claims over which it had original jurisdiction"). Plaintiff's claims under District of Columbia law regarding the shipment of his property home and the alleged failure to provide a receipt therefor shall accordingly be DISMISSED, WITHOUT PREJUDICE to refiling in the District of Columbia Superior Court.

### 3. The Alleged Refusal to Enroll Plaintiff in a Drug Program and Alleged Denial of Reclassification Hearing.

#### a. Plaintiff's Equal Protection Claim

Plaintiff claims that the alleged failure of the Defendants to provide him with an opportunity to participate in an intensive drug program while other prisoners with similar drug problems were allegedly provid-

ed such opportunities, and the alleged failure to provide him with a reclassification hearing constituted a denial of his rights under the Equal Protection Clause. Complaint 94–2770 at ¶ 25; Supp. Complaint 94–2770 at ¶ 7. Because Plaintiff fails to state a claim for which relief can be granted under the Equal Protection Clause, the Court will GRANT the Defendants' Motion to Dismiss Plaintiff's claims thereunder regarding the alleged failure to provide him with drug counseling or a reclassification hearing.

Plaintiff's Complaints contain only conclusory assertions. Complaint 94–2770 states that Plaintiff was "denied Equal Protection of the Law ... when: Defendants treated him differently than other prisoners with a similar drug problem in need of a [sic] intensive drug program." Complaint 94–2770 at ¶ 25. Supplemental Complaint 94–2770 states that "denying Plaintiff's reclass hearing ... violate[s] Plaintiff['s] ... right of *Equal Protection* of law secured by the U.S. Constitution." Supp. Complaint 94–2770 at ¶ 7 (emphasis in original). Nowhere in the Complaints does the substance of Plaintiff's Equal Protection claim appear. Plaintiff does makes only the conclusory allegations that he was treated differently than other prisoners. He does not allege that the alleged disparate treatment was the result of a constitutionally impermissible motive. As noted, the Court need not accept legal conclusions cast in the form of factual allegations. *Kowal,* 16 F.3d at 1276. Thus, Plaintiff fails to state a claim under the Equal Protection Clause for which relief may be granted.

### b. Plaintiff's Due Process Claim

■ The basis for any other constitutional claim with regard to the alleged refusal to afford Plaintiff an opportunity to participate in a drug counseling program or the alleged denial of a reclassification hearing is not readily apparent from the Complaint. However, consistent with the liberal treatment afforded *pro se* litigants, the Court will construe Plaintiff's Complaint as lodging the only potentially applicable constitutional argument—that the alleged refusal to provide Plaintiff with an intensive drug program or a reclassification hearing violates Plaintiff's

due process rights. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (instructing courts to construe liberally a *pro se* prisoner's unartfully drafted claims).

So construing the Complaint, Plaintiff's argument is that his participation in the drug program is a prerequisite to his being paroled, that he has a liberty interest in being paroled, and that the failure to provide Plaintiff adequate opportunity to participate in these programs constitutes a deprivation of Plaintiff's liberty without due process of law. *See generally* Complaint 94–2770 at ¶ 25(b). Plaintiff also argues that a reclassification hearing is a prerequisite to his transfer to a minimum security facility, that he has a liberty interest in being transferred, and that the alleged denial of a hearing deprived Plaintiff of his liberty without due process of law.

■ Because a necessary predicate for due process rights to attach here is a liberty interest in parole or in transfer, the logically antecedent inquiry is whether such a liberty interest exists. First, the mere presence of a parole system does not create a constitutionally protected liberty interest in parole release. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Rather, the existence of a protected liberty interest hinges on the provisions of the parole determination statute. *Id.*

■ The law is clear in this Circuit that the pertinent parole statute, D.C.Code 24–204, does not create a liberty interest sufficient to trigger due process protections. *Brandon v. District of Columbia Bd. of Parole,* 631 F.Supp. 435, 439 (D.D.C.1986), *aff'd,* 823 F.2d 644 (D.C.Cir.1987) ("The statute [D.C.Code § 24–204] contains no mandatory language requiring the Parole Board to release inmates. Moreover, the statute provides the Board broad discretion as to when an inmate is eligible for parole. There are no explicit written pronouncements in the statute which would create a liberty interest in parole."). Because Plaintiff does not have a protected liberty interest in parole, any complaint arising out of an alleged failure to

provide recommended programs fails to state a due process claim.

■ Second, prisoners generally do not have a liberty interest in being housed in a prison at a particular security level. *See Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). In *Meachum,* the Court held that the Due Process Clause itself did not create a liberty interest in freedom from transfer to a maximum security prison, albeit one with burdensome limitations. *Id.* To be housed in a maximum security prison is "within the normal limits or range of custody which the conviction has authorized the State to impose." *Id.* In addition, Plaintiff alleges no state-created liberty interest here; therefore, Plaintiff fails to state a Due Process claim upon which relief may be granted regarding reclassification hearings.

For the foregoing reasons, the Court will GRANT the Defendants' Motion to Dismiss with respect to Plaintiff's claims regarding the alleged failure to provide him with drug counseling and reclassification hearings.

### 4. The Alleged Denial of Plaintiff's Right to Address the Court.

■ Plaintiff alleges that he was denied his First Amendment right to "freely ... address the court without hinderance [or] fear of retaliation" when the Defendants allegedly retaliated against him by refusing to enroll him in the drug program, process his inmate grievance form properly, or transfer him to a minimum security facility. Complaint 94–2770 at ¶¶ 23–24; *see also* Plaintiff's Opp. at ¶ 4. Because Plaintiff fails to establish that the state impermissibly infringed upon his right to engage in a protected activity, and because Plaintiff does not allege that the allegedly retaliatory action failed to advance legitimate goals of the correctional institution, the Court will grant the Defendants' Motion to Dismiss Plaintiff's retaliation claim.

■ To state a First Amendment claim for retaliation a prisoner must allege the following: (1) "the type of activity he engaged in was protected under the First Amendment;" (2) "the state impermissibly infringed on his right to engage in the pro-

tected activity;" and (3) "the retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *See Rizzo v. Dawson,* 778 F.2d 527, 530–31 (9th Cir.1985).

■ First, Plaintiff must allege that the type of activity he engaged in was protected under the First Amendment. Here, Plaintiff alleges that he has been retaliated against "since the filing of [his] civil complaint" and that his right to "address the court" is protected under the First Amendment. Complaint 94–2770 at ¶ 16. It is established that the right of access to the courts is subsumed under the First Amendment right to petition the government for redress of grievances. *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir.1989). Thus, Plaintiff adequately alleges that he was engaging in activity protected under the First Amendment.

■ Second, Plaintiff must allege that the state impermissibly infringed on his right to engage in the protected activity. "[P]rison officials may not retaliate against an inmate for exercising a constitutionally protected right." *Adams v. James,* 784 F.2d 1077, 1082 (11th Cir.1986); *see Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988) ("Intentional obstruction of a prisoner's right to seek redress of grievances 'is precisely the sort of oppression that ... section 1983 [is] intended to remedy.'" (quoting *Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987))). Plaintiff alleges retaliation for his filing of a civil complaint. Complaint 94–2770 at ¶ 16.

■ However, retaliation also involves a causation element that was enunciated by the United States Supreme Court in *Mt. Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). A plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that the protected conduct was a "substantial factor" or "motivating factor" in the defendant's decision. *Id.* at 287, 97 S.Ct. at 576. At that point, the burden shifts to the defendant to establish that it would have reached the same decision even in the absence of the protected conduct. *Id.* Here,

Plaintiff has merely alleged that the challenged state action followed the filing of his Complaint. Plaintiff fails to allege facts that would show his pending litigation was a "substantial" or "motivating" factor in the Defendants' actions. Thus, Plaintiff does not sufficiently allege the second element of a claim for retaliation.

■■■■■■ Further, Plaintiff fails to allege that the challenged actions did not advance legitimate penological objectives, or that the actions were otherwise not narrowly tailored to achieve such objectives. Unlike an ordinary citizen's, the First Amendment rights of prisoners may be permissibly restricted by prison authorities because of institutional needs. *See Rizzo,* 778 F.2d at 532. A prison inmate retains only those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the correctional system. *See Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Thus, Plaintiff fails to allege the third requirement of a claim for retaliation.

■■■■ In short, "bare allegations of arbitrary retaliation" are not enough by themselves to avoid dismissal." *Rizzo,* 778 F.2d at 532 n. 4. Accordingly, the Court shall GRANT Defendants' Motion to Dismiss Plaintiff's claim regarding alleged retaliation.

### 5. The Alleged Failure to Follow Grievance Procedures

■■■■■ Plaintiff claims that the Defendants violated his right to Due Process by failing to follow grievance procedures when they refused to provide Plaintiff with a receipt of proof that he had filed a grievance. Complaint 95–29 at ¶¶ 8–9. For a complaint to be actionable under § 1983, it must allege the violation of some right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled in part, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Thus, the first inquiry for a Due Process claim is whether such a right, privilege, or immunity exists.

■■■■■ Prison inmates do not have a constitutionally protected right to a grievance procedure. *See, e.g., Jones v. North Carolina Prisoners Labor Union,* 433 U.S. 119, 138, 97 S.Ct. 2532, 2544, 53 L.Ed.2d 629 (1977) (Burger, J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994) (holding that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state") (citing *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991); *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.), *cert. denied,* 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988)); *see also Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989) (no constitutional or state created right to grievance procedure; prison officials may place reasonable limits on prisoner's access to grievance procedure). "A prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993) (citing *Azeez v. DeRobertis,* 568 F.Supp. 8, 10 (N.D.Ill. 1982)).

■■■■ Because a prison grievance procedure does not confer any substantive constitutional right upon prison inmates, prison officials' failure to comply with the grievance procedure is not actionable. *See Brown v. Dodson,* 863 F.Supp. 284 (W.D.Va.1994). Accordingly, the Court shall GRANT the Defendants' Motion to Dismiss Plaintiff's claims regarding the alleged failure to follow grievance procedures.

### B. The Defendants are Entitled to Qualified Immunity.

■■■■■ To the extent that Plaintiff is suing the Defendants in their individual capacities, the doctrine of qualified immunity protects them from suit. As stated in *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982):

government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

■ Plaintiff's allegations do not state a cognizable claim of any constitutional wrongdoing by any of the Defendants. To the extent Plaintiff contends that the Defendants are liable for the possible negligence of their subordinates, these allegations must fail because the doctrine of *respondeat superior* is not available under § 1983. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Haynesworth v. Miller,* 820 F.2d 1245, 1259 (D.C.Cir.1987) (fellow government employees cannot be held liable under the theory of *respondeat superior* for either constitutional or common law torts); *Smith–Bey v. District of Columbia,* 546 F.Supp. 813, 814 (D.D.C. 1982) (same).

■ In addition, there is a heightened pleading requirement in cases against public officials. "Conclusory allegations of unconstitutional ... conduct will not withstand a public official's dispositive pre-trial motion." *Martin v. Malhoyt,* 830 F.2d 237, 257 (D.C.Cir.1987).

Plaintiff does not set forth sufficient facts to elevate his claim above conclusory allegations against the Defendants. Thus, the Court shall GRANT the Defendants' Motion to Dismiss Plaintiff's claims against the Defendants in their individual capacities.

**C. Plaintiff Fails to State a Claim upon which Relief can be Granted against the Defendants in their Official Capacities.**

■ It is well settled that if Plaintiff is suing the Defendants in their official capacities, the suit is treated as a suit against the District of Columbia. *Kentucky v. Gra-*

*ham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). However, under § 1983, local governments can be sued only where the action alleged to be unconstitutional "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36. Plaintiff does not allege that the Defendants adopted and promulgated a policy, order, regulation, or decision that was implemented by their subordinates in contravention of Plaintiff's constitutional rights. Plaintiff therefore fails to state claim upon which relief can be granted. Accordingly, the Court shall GRANT the Defendants' Motion to Dismiss Plaintiff's claims against the Defendants in their official capacities.

### III. CONCLUSION

Upon careful consideration of the parties' pleadings in the light most favorable to Plaintiff, the entire record herein, and the applicable law with respect thereto, the Court will enter an Order of even date herewith consistent with the foregoing Memorandum Opinion GRANTING the Defendants' Motion to Dismiss.

### *ORDER*

Upon consideration of the Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment, the Plaintiff's Opposition thereto, and the applicable law thereto, and for the reasons articulated in the Court's Memorandum Opinion of even date herewith, it is, by the Court, this 27th day of June, 1995,

ORDERED that the Defendants' Motion to Dismiss shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the Plaintiff's claims under District of Columbia law shall be DISMISSED, WITHOUT PREJUDICE to refiling in the District of Columbia Superior Court; and it is

FURTHER ORDERED that, in light of the foregoing, the Clerk of Court shall note

the above-entitled case as DISMISSED from the docket of this Court.