BLD-139                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4654
_____

JEFFREY D. TURNER,
                                              Appellant

v.

J. LEGGETT, Correctional Officer IV at SCI Fayette; DR. JIN;
MICHELLE  LUCAS; JOHN MCANANY, CRNS at SCI Greene;
NEDRA GREGO, RN at SCI Greene; DORINA VARNER, Chief Grievance
Coordinator at Central Office; DR. HERBIK, Doctor at SCI Fayette;
R. TRETINIK, CHCA at SCI Fayette;  CHRIS MYERS, Physican Assistant at
SCI Fayette; S.BERRIER, CRNS at SCI Fayette; R .J. GODINES,
Correctional Officer #1 at SCI Fayette; DR.RONALD LONG,
Doctor st SCI-Smithfield; B. MALSCH, CO #1 at S.C.I. Fayette;
C.O. VASBINDER, Correctional Officer I at S.C. I. Fayette;
SGT. ASCENIO, Correctional Officer II at S.C.I. Fayette
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 09-cv-01568)
District Judge:  Honorable David Stewart Cercone
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
**March 17, 2011**
Before:  SLOVITER, JORDAN and GREENAWAY, JR., <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 6, 2011)
_____

OPINION
_____

PER CURIAM

Jeffrey Turner filed suit against the defendants for alleged violations of his civil rights in state correctional institutions where he is or has been held as a prisoner. One set of claims in his second amended complaint related to the medical treatment he received for his broken toe. Another set of claims related to his treatment for a rash or hives. Turner also complained about the cause and treatment of coughing, headaches, and pain in his head. He made allegations about wrong, inadequate, and improperly administered medications and treatments. He also contended that the defendants denied him food or a prescribed "snack bag" to take with his medicine, which caused gas and similar unpleasantries. Turner complained about not being permitted to see different specialists, including the denial of his request to see an otolaryngologist again.

Turner's other allegations relate to his exposure to environmental tobacco smoke ("ETS"). More specifically, on one day in November 2009, when Turner was in the exercise yard, a guard smoked a cigarette. On another day in March 2010, two other guards were smoking in the yard and refused to stop on Turner's request. At one point, instead of snuffing out their cigarettes, they tossed them, still-burning, on the ground. In the course of setting forth his allegations, Turner mentioned that he had filed grievances (and attached a few to his complaint); he claimed without factual support that one defendant denied his grievances in a racially discriminatory manner.

The defendants, proceeding in two groups, filed motions to dismiss the second amended complaint. Ten correctional employees identifying themselves as the DOC

2

defendants argued, among other things, that Turner failed to allege the personal involvement of many of them, failed to state a claim upon which relief could be granted, and failed to exhaust his administrative remedies. In support of their argument about Turner's failure to exhaust, they presented approximately 100 pages of declarations and grievances and their resolutions. In their motion, the medical defendants argued that no claims could survive against one defendant who was not alleged to be personally involved and that Turner had failed to state a claim upon which relief could be granted against any of them. Referring to the few grievances attached to the complaint and those submitted by the DOC defendants, the medical defendants also argued that Turner's claims were barred by his failure to exhaust his administrative remedies.

The Magistrate Judge reviewed all of the exhibits submitted by the DOC defendants (including some additional exhibits that she had requested from them) and concluded that any claims that Turner had not timely appealed to final review had been defaulted. However, the Magistrate Judge also described the grievances found to be exhausted, which largely corresponded to Turner's medical claims described above. Considering these claims and what the Magistrate Judge described as a record of extensive medical treatment, the Magistrate Judge stated that Turner presented a case about disagreements over the appropriate course of treatment, which is not an actionable Eighth Amendment violation. The Magistrate Judge also recommended that the ETS claim be dismissed for failure to state a claim. Turner objected to the report and recommendation. In response to the failure to exhaust claim, he directed the District

3

Court to the three grievances he had submitted with his complaint. He otherwise focused on his ETS claim.

The District Court overruled Turner's objections and adopted the report and recommendation as its opinion, augmenting it in the following respects. In dismissing the complaint, the District Court emphasized that Turner had not alleged any facts that rose to the level of a cognizable Eighth Amendment claim. The District Court held that Turner's allegations fell short of stating a plausible claim of deliberate indifference to a serious medical need. The District Court also noted that Turner's objections and exhibits demonstrated the defendants' attentiveness to his medical needs. The District Court also further explained how Turner failed to state an ETS claim.

Turner appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review is plenary. See Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). Upon review, we will affirm the District Court's judgment because no substantial issue is presented on appeal. See L.A.R. 27.4; I.O.P. 10.6.

We first consider whether the District Court erred in converting the DOC defendants' motion to dismiss into a motion for summary judgment. To decide a motion to dismiss, a court generally should consider "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004). If a court considers other matters, a motion to dismiss should be converted to a motion for summary judgment, see Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d

4

1192, 1197 (3d Cir. 1993), and the court must provide notice and an opportunity to oppose the motion, see Hancock Industries v. Schaeffer, 811 F.2d 225, 229 (3d Cir. 1987). However, the failure to give notice is harmless error if there is no set of facts on which a party may recover. See id.

Here, the District Court explicitly considered "the record": copies of Turner's grievances and appeals, the Department of Corrections' responses to them, and declarations submitted by the defendants. However, any error was harmless, because, as the District Court explained in ruling on all the claims in the complaint (including those it held to be procedurally defaulted), Turner did not state a claim upon which relief can be granted.

Turner's Eighth Amendment claims were not actionable. The bar to plead an Eighth Amendment violation is high – "[o]nly 'unnecessary and wanton infliction of pain' or 'deliberate indifference to the serious medical needs' of prisoners [is] sufficiently egregious to rise to the level of a constitutional violation." Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). Violations include the intentional infliction of pain on a prisoner; the denial of reasonable requests for medical treatment where the denial exposes the prisoner to undue suffering or the threat of tangible residual injury; and the intentional refusal to provide care in cases where the need for medical care is known. See id. The medical condition must be serious; and the prison officials must be deliberately indifferent to it. See id. at 236. However, neither allegations of medical malpractice nor

5

a disagreement about a course of treatment establishes a constitutional violation. See id. at 235.

Turner, despite amending his complaint two times, did not meet the pleading bar. Even if we assume that he described serious medical needs, he did not allege deliberate indifference to them. Instead, he listed his disagreements with various courses of treatment prescribed for him in prison. For instance, after conducting an exam and ordering an X-ray, a doctor concluded that the proper course of treatment for Turner's broken toe was to allow it to set on its own. Turner disagreed with the doctor's conclusion; he apparently wanted it to be set in a cast. In relation to a rash, he disagreed with a decision to discontinue an ointment and wanted a second special biopsy of his skin. (Also, in relation to the biopsy, he seemingly wanted it more to show eligibility to participate in some sort of class action suit than to address a medical need.) In other claims, he said that he was receiving the "wrong treatment," and explained how he disagreed with doctors' decisions to eliminate or change other medications. He also took issue with medical decisions about visits to specialists. Turner did not sufficiently plead that he has been denied medical care (despite some conclusory allegations that he was denied care). Instead, in addition to showing that he based his claim on disagreements about his treatment regimens, Turner's allegations revealed many trips to prison infirmaries and many visits with doctors (including at least one specialist) and other medical personnel. In short, Turner did not allege that the defendants were deliberately indifferent to any serious medical needs.

6

Turner also did not state a claim based on ETS exposure. Liability based on exposure to ETS requires proof of (1) exposure to unreasonably high levels of ETS contrary to contemporary standards of decency; and (2) deliberate indifference by the authorities to the exposure to ETS. Helling v. McKinney, 509 U.S. 25, 35 (1993). Turner complained of occasional ETS exposure in the outside recreational yard, which is not an actionable claim. Compare, e.g., Helling, 509 U.S. at 35 (holding that bunking with a cellmate who smoked five packs of cigarettes per day exposed an inmate to an unreasonable risk of future harm from ETS exposure), and Atkinson v. Taylor, 316 F.3d 257, 259 (3d Cir. 2003) (holding that a prisoner who claimed that he had shared a cell with constant smokers for many months stated a claim for a violation of a clearly established right) with Richardson v. Spurlock, 260 F.3d 495, 498 (5th Cir. 2001) (holding that sitting near some smokers sometimes is not an unreasonable exposure to ETS) and Pryor-El v. Kelly, 892 F. Supp. 261, 267 (D.D.C. 1995) (dismissing an ETS claim in which the plaintiff alleged "only that various unnamed inmates and prison officials smoke 'in the TV room, games room, and the letter writing room'").

In short, after reviewing all of the allegations in Turner's complaint, including the claims discussed in more detail above, we agree with the District Court's conclusion that Turner did not raise a plausible claim for relief. Accordingly, we will affirm the District Court's judgment.