Norman MUCKWAY and Irene Muckway, Plaintiffs-Appellants,

v.

Vance CRAFT, Building Commissioner of LaPorte County, Indiana; James Blint, President; LaPorte County Plan Commission; LaPorte County Board of Zoning Appeals; Charles Ackerman; Kenneth Swanson; Charles Hendricks; Ned Kolb; Elvin Rogers; Robert Johnson; Lee H. Reinfurth; and William Campbell, Commissioners; the County of LaPorte, Indiana, and Turnpike Auto Wrecking, Defendants-Appellees.

No. 85–1281.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 27, 1985.

Decided April 23, 1986.

Rehearing and Rehearing En Banc Denied June 10, 1986.

Richard J. Troy, Sneider & Troy, Chicago, Ill., for plaintiffs-appellants.

Robert M. Edwards, Jr., Jones, Benchain, Ford, Pankow & Lewis, South Bend, Ind.,

Martin W. Kus, Newby, Lewis, Jaminski & Jones, LaPorte, Ind., for defendants-appellees.

Before BAUER and COFFEY, Circuit Judges, and GORDON, Senior District Judge.[*]

COFFEY, Circuit Judge.

The plaintiffs, Norman and Irene Muckway, appeal the district court's dismissal, for failure to state a claim upon which relief can be granted in a federal court proceeding. Their complaint alleged that the defendants' failure to enforce a zoning ordinance denied them equal protection of the law. We affirm.

### I.

According to the plaintiffs' complaint, the plaintiffs purchased land in LaPorte County, Indiana and constructed a house on the land in 1951. At the time of the plaintiffs' purchase and construction, LaPorte County did not have a comprehensive zoning or land use plan and the land surrounding the Muckway's property was used for agriculture or single-family purposes. Three years later, in 1954, the defendant Turnpike Auto Wrecking ("Turnpike") began operating a junkyard on land adjoining the Muckway's property.

In 1956, the Board of Commissioners of LaPorte County passed a zoning ordinance restricting the plaintiffs' and Turnpike's property to single-family and two-family purposes. According to the complaint, Turnpike's operation was a "nonconforming use," which, under the ordinance, was to be discontinued within five years. The ordinance's enforcement section provided:

"*Section 7.4* Enforcement

(a) Any person may, by suit in the Circuit Court of the County, enjoin the violation of this ordinance.

(b) The commission or the Board may, by mandatory injunction in the Circuit Court of the County, require the removal of a structure erected in violation of this ordinance.

(c) A use that violates this ordinance shall be treated as if it were a common nuisance, and it may be abated in the same manner as such a nuisance."

The Indiana nuisance statute, Ind.Code 34–1–52–1 *et seq.*, defines a nuisance as "Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to free use of property, so as essentially to interfere with the comfortable enjoyment of life or property." A suit to "enjoin or abate the nuisance or to recover damages" may be brought by "any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance." *Id.*

Even though the ordinance required Turnpike to cease operations by 1961, Turnpike continued to operate a junkyard on its property and, in 1961 and 1963 purchased three adjoining lots to expand its operations. From 1962 to 1979 Norman Muckway lodged numerous complaints with the LaPorte Plan Commission ("Plan Commission") about Turnpike's conducting a junkyard business in a residential zone. Despite Mr. Muckway's complaints, the Plan Commission failed to institute legal action to enjoin Turnpike's use of the land as a junkyard.

The plaintiffs filed suit in the United States District Court for the Northern District of Indiana in 1980 alleging that the Plan Commission's failure to file an action against Turnpike violated the Muckways' rights to due process and equal protection. Specifically, the complaint, naming the Building Commissioner, the president of the LaPorte County Plan Commission, the commissioners of the LaPorte County Plan Commission, LaPorte County and Turnpike Auto Wrecking, alleged:

"The intentional, deliberate and willful refusal of the Defendants (other than

---

[*] The Honorable Myron L. Gordon, Senior District Judge of the Eastern District of Wisconsin, is sitting by designation.

TURNPIKE AUTO WRECKING) to enforce the Zoning Ordinances of LaPorte County has denied Plaintiffs their right to equal protection under law as secured by the Fourteenth Amendment to the Constitution of the United States in that Plaintiffs are entitled to benefits of the Zoning Ordinance of LaPorte County, i.e. protection from noxious uses in a residential zone and the right to a relatively dust-free, smoke-free, quiet environment. The conduct of said Defendants is under color of the Zoning Ordinance of the County of LaPorte and the laws of State of Indiana. The refusal to enforce the law, where even the attorney for the Zoning Board of Appeals found a patent violation, is a denial of the Plaintiffs' rights, privileges and immunities secured by the Constitution of the United States and is, therefore, actionable under the provision of § 1983, Title 42, U.S.C.A."

The complaint contended that because the county attorney for LaPorte County, Frank J. Lanigan, also represented Turnpike, "recourse to the Board of Commissioners of LaPorte County would be fruitless." The complaint alleged that "the Defendant, TURNPIKE AUTO WRECKING COMPANY, and other Defendants have acted in concert to deprive Plaintiffs of their rights, which actions constitute constructive fraud." The Muckways requested compensatory and punitive damages from the defendants and an order enjoining and restraining Turnpike from "operating the illegal junkyard and ordering the removal forthwith of all autos, trucks, spare parts, tires, junk and any and all vestiges of the junkyard."

On April 13, 1981 the district court abstained under the doctrine of *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), until Indiana state courts had an opportunity to decide, "whether Turnpike's nonconforming use was an 'open use' which it would have to be in order for the ordinance to require its discontinuance, whether the zoning ordinance in question was authorized and proffered under a myriad of state statutory and constitutional provisions, and whether the defendant officers were acting within their discretionary authority in failing to prosecute Turnpike." No futher action was taken either in federal or state court until May 23, 1984 when the district court sent notice to the parties that the case would be dismissed unless good cause was shown. Plaintiffs filed a Motion to Permit Cause to Remain on the Court Docket and for Leave to File an Amended Complaint Instanter alleging that the interim decision of the Indiana Supreme Court in *Ailes v. Decatur County Area Planning Commission,* 448 N.E.2d 1057 (Ind.1983) held that local governments could not disallow nonconforming uses in existence before the passage of the zoning ordinance, such as Turnpike's. However, the plaintiffs argued that *Ailes* held that local governments could enjoin expansions of preexisting nonconforming uses, like those made by Turnpike in 1961 and 1963. The district court dismissed both the complaint and the amended complaint for failure to state a claim upon which relief can be granted. The district court dismissed the plaintiffs' due process claim ruling that they had failed to allege a deprivation of life, liberty, property or constitutional right. The court also held that the plaintiffs' right to seek an injunction under § 7.4 of the zoning ordinance and their rights to seek an injunction or abatement of a nuisance and damages under the Indiana nuisance statute were sufficient to satisfy due process. The court dismissed the equal protection claim holding that "[t]he plaintiffs have not alleged that they were discriminated against in a vicious or irrational fashion and as the Seventh Circuit Court of Appeals stated in *Jackson v. City of Joliet,* 715 F.2d 1200 (7th Cir.1983), only deliberate discrimination violates equal protection." The plaintiffs appeal only the dismissal of their equal protection claim.

II.

The equal protection clause "protects against intentional invidious discrimination by the state against persons similarly situated." *Ciechon v. City of Chicago,* 686 F.2d 511 (7th Cir.1982). A law making no

impermissible classification (a facially neutral statute) may violate the equal protection clause if it is applied in such a way to create an impermissible classification. *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

"A plaintiff 'must demonstrate intentional or purposeful discrimination' to show an equal protection violation. ' "Discriminatory purpose," however, implies more than intent as volition or intent as awareness of consequences.' It implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adversive effects on the identifiable group. An administrative decision which misinterprets or distorts a valid state law can result in a denial of equal protection *if* there is such a design or intent to discriminate."

*Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir.1982) (emphasis in original) (citations omitted).

■ The plaintiffs allege that they were denied their "benefits of the zoning ordinance of LaPorte County, i.e. protection from noxious uses in a residential zone and the right to a relatively dust-free, smoke-free, quiet environment," because of "the intentionally, deliberate and willful refusal of the public official Defendants to do their duty, acting in concert with the Defendant Turnpike Auto Wrecking." Initially we note that this suit against a state agency challenging its refusal to take an enforcement action raises a question of standing. "The party who invokes [judicial] power must be able to show ... that he has sustained or is immediately in danger of sustaining some *direct* injury *as the result of* [a statute's] enforcement." *Linda R.S. v. Richard D.*, 410 U.S. 614, 618, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) (*quoting Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078 (1923) (emphasis added by the Supreme Court in *Linda R.S.*). The causation requirement in standing was addressed by the court in *HOPE, Inc. v. County of DuPage, Ill.*, 738 F.2d 797 (7th Cir.1984). In *HOPE*, the plaintiffs alleged that the County Board of DuPage County, Illinois had engaged in "exclusionary housing practices" that effectively denied adequate housing to racial minorities and persons with low or moderate incomes. We held that the plaintiffs lacked standing to sue because they failed either to allege or subsequently prove the causal connection between the County Board's alleged activity and their asserted injury.

"Specifically, there have been no allegations nor proof offered by the individual plaintiffs establishing that a single proposed project for low or moderate income housing was in any way impeded, much less denied, by any discrete and concerted activity on the part of the DuPage County Board. Furthermore, there is a glaring absence of testimony much less evidence in the record to establish that any third parties in fact actually existed who were ready, willing, and able to build low or moderate income housing in the unincorporated portions of the County were it not for the challenged zoning ordinance and the alleged unconstitutional enforcement thereof. It is at best mere conjecture and speculation that any third party would have built low income housing if it were not for fear of some sort of retaliation on the part of the County Board. In addition, we think it is telling of the plaintiffs' argument that during the ten years over which this action has been pending, the plaintiffs have been unable to cite to even one proposed low income housing project that the County Board in turn refused to grant any necessary zoning variance or special-use permit."

*Id.* at 807.

Like the plaintiffs in *HOPE*, the Muckways attempt to allege that the zoning board's action, the failure to sue Turnpike, caused their injury. Standing to challenge an agency's failure to take an enforcement action focuses on the denial of statutory benefits to the class of beneficiaries:

"[R]equests for administrative enforcement typically seek to prevent concrete and future injuries that Congress has

made cognizable ... or to obtain palpable benefits that Congress has intended to bestow.... Entitlements to receive these benefits or to be free of these injuries often run to specific classes of individuals whom Congress has singled out as statutory beneficiaries. The interests at stake in review of administrative enforcement decisions are thus more focused and in many circumstances more pressing than those at stake in criminal prosecutorial decisions.... Unlike traditional exercises of prosecutorial discretion, 'the decision to enforce—or not to enforce—may itself result in significant burdens on a ... statutory benefit.'"

*Heckler v. Chaney,* — U.S. —, 105 S.Ct. 1649, 1664, 84 L.Ed.2d 714 (1985) (Marshall, J. concurring). We note that citizens are given standing to challenge an agency decision not to enforce a statute because, "the decision to enforce—or not to enforce— *may itself result* in significant burdens on a ... statutory beneficiary." *Id.* (emphasis added). The LaPorte County Zoning Ordinance provides two methods for enforcing its mandates: (1) the Plan Commission may sue for an injunction or (2) a private party may institute an action under the ordinance or under the Indiana Nuisance Statute. Since the private party has two alternatives to preserve their rights by instituting their own action either under the nuisance statute or under the ordinance, we hold the Plan Commission's failure to seek an injunction does not *result in* significant burdens on a statutory beneficiary. In other words, the Plan Commission's failure to act cannot be considered of itself as the cause of the plaintiffs' alleged injury ("protection from noxious uses in a residential zone and the right to a relatively dust-free, smoke-free, quiet environment") in light of the fact that the private party could have instituted the action.

However, we need not resolve the issue of standing because a plaintiff in a § 1983 action must also allege and establish causation as an element of the cause of action. *See e.g. HOPE,* 738 F.2d at 808–10 (the evidence failed to substantiate the plaintiffs' claim that the zoning board's alleged "intimidating actions" towards developers of low or moderate income housing projects caused the plaintiffs' injury—*i.e.,* the "developers' decision not to construct low and moderate income housing." *Id.* at 810). As we recently emphasized:

> "'A section 1983 action is a tort damage action even though the duty the defendant is alleged to have breached is created by the Constitution or federal law.' As a common law tort action, the plaintiff in a civil rights tort action bears the burden of establishing that the defendant owed the plaintiff a duty, that the defendant breached his duties to the plaintiff, and that this breach caused the plaintiff actual damages."

*Garza v. Henderson,* 779 F.2d 390, 395 (7th Cir.1985). Indeed, because the decision whether to institute legal action is committed to the Plan Commission's discretion ("The Commission of the Board *may ...*") the plaintiffs cannot show that the Plan Commission owed them a duty to enforce the ordinance in the circuit court. And, as our analysis of the standing issue revealed, the plaintiffs have failed to demonstrate that the Commission's failure to act caused their alleged injury ("protection from noxious uses in a residential zone and the right to a relatively dust-free, smoke-free, quiet environment") because the plaintiffs could have enforced their rights to be free from "noxious uses, in a residential zone" and to "a relatively dust-free, smoke-free, quiet environment" by themselves by initiating a state court action against Turnpike.

■ Even if the plaintiffs' complaint were free of these fatal problems of causation, either in establishing standing or the elements of a cause of action under § 1983, an analysis of their equal protection claim reveals that it states at best only a violation of state law. The plaintiffs contend that an alleged violation of state law (the Board's failure to file suit against Turnpike and Turnpike's improper influence of the Board's decisions through its attorney, Lanigan) is a violation of the federal constitutional right to equal protection. The starting point for our analysis of whether

this alleged violation of state law stated a claim under the federal constitutional guarantee to equal protection is *Snowden v. Hughes*, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). In *Snowden*, a candidate who received the second highest number of votes in a primary election alleged that the election board certified only one name to be placed on the ballot, rather than the names of the two candidates receiving the first and second highest number of votes as required by state law. According to the plaintiff, failing to include his name on the ballot denied him his right to take office, "[s]ince three representatives were to be elected, ... and only three were to be nominated by the primary election, election at the primary as one of the two Republican nominees was ... tantamount to election to the office of representative." *Id.* at 3, 64 S.Ct. at 398. The Court summarized the disappointed candidate's equal protection claim:

> "The denial alleged. is of the right of petitioner to be a candidate for and to be elected to public office upon receiving a sufficient number of votes. The right is one secured to him by state statute and the deprivation of right is alleged to result solely from the Board's failure to obey state law. There is no contention that the statutes of the state are in any respect inconsistent with the guarantees of the Fourteenth Amendment. There is no allegation of any facts tending to show that in refusing to certify petitioner as a nominee, the Board was making any intentional or purposeful discrimination between persons or classes. On the argument before us petitioner disclaimed any contention that class or racial discrimination is involved. The insistence is rather that the Board, merely by failing to certify petitioner as a duly elected nominee, has denied to him a right conferred by state law and has thereby denied to him the equal protection of the laws secured by the Fourteenth Amendment."

*Id.* at 7–8, 64 S.Ct. at 400–01. The Court dismissed the Equal Protection claim for several reasons; first, the complaint failed to allege that the administration of the statute resulted in the classification of similarly situated persons because of intentional or purposeful discrimination on the part of the statute's administrators:

> "The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person, or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself. But a discriminatory purpose is not presumed, there must be a showing of 'clear and intentional discrimination'...."

*Id.* at 8, 64 S.Ct. at 401 (citations omitted). Moreover, the complaint failed to state an equal protection claim because it failed to allege that the state's refusal to enforce its own law constituted a denial of a right, privilege or immunity secured by the federal constitution:

> "If the action of the Board is official action it is subject to constitutional infirmity to the same but no greater extent than if the action were taken by the state legislature. Its illegality under the state statute can neither add to nor subtract from its constitutional validity. Mere violation of a state statute does not infringe the federal Constitution. And state action, even though illegal under state law, can be no more and no less constitutional under the Fourteenth Amendment than if it were sanctioned by the state legislature. A state statute which provided that one nominee rather than two should be certified in a particular election district would not be unconstitutional on its face and would be open to attack only if it were shown, as it is not here, that the exclusion of one and the election of another were invidious and purposely discriminatory.".

*Id.* at 11, 64 S.Ct. at 402 (citations omitted). In *Shango v. Jurich,* 681 F.2d 1091, 1103–04 (7th Cir.1981), our Court summarized the cases reaffirming this principle (to allege that a state's failure to enforce its own law is a violation of the federal equal protection clause), the plaintiff must set forth: (1) a classification of similarly situated persons caused by intentional or purposeful discrimination on the part of the statute's administrators; and (2) an allegation that the State's failure to enforce its law constituted a denial of a right, privilege or immunity secured by the federal constitution). *C.f., Stern v. Tarrant County Hosp. Dist.,* 778 F.2d 1052 (5th Cir.1985) (rejecting the argument that classifying persons in contravention of a state statute forbidding the classification is a *per se* violation of the federal equal protection clause because the Fourteenth Amendment's guarantee of equal protection is based on federal, rather than state, standards of equality).

A review of both the complaint and the amended complaint reveals that the plaintiffs failed to allege that other persons requesting the Plan Commission to enforce a zoning ordinance had their requests honored. Further, the plaintiffs failed to allege that Turnpike was the only junkyard that the Plan Commission refused to move against. Moreover, the Complaint fails to allege that the Board's refusal to file suit against Turnpike constituted a denial of a right, privilege or immunity secured by the federal constitution. To the contrary, the denial alleged is the right to receive the benefit of the zoning ordinance, a right secured solely by state laws. The Muckways' contention that the denial of their rights under the zoning ordinance violated their right to equal protection ignores the Supreme Court's instruction that the guarantee of equal protection of the laws is not a source of substantive rights. *Harris v. McCrae,* 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). "It is not the province of [the federal courts] to create substantive constitutional rights in the name of guaranteeing equal protection of the laws." *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 33, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973). Because the Muckways failed to allege either: (1) a classification of similarly situated persons caused by intentional or purposeful discrimination on the part of the Board or (2) that the Board's failure to enforce the zoning law constituted a denial of a right, privilege or immunity secured by the federal constitution, we hold that the attempted equal protection claim alleged, at best, nothing more than a violation of state law. As we have emphasized in the past, and re-emphasize in this opinion, "it is not the function of federal district courts to serve as zoning appeals boards. Availability of federal review of every zoning decision would only serve to further congest an already overburdened federal court system." *Scudder v. Town of Greendale, Ind.,* 704 F.2d 999, 1003 (7th Cir.1983) (citation omitted). Moreover, improperly treating state claims as stating federal causes of action, "displaces state lawmaking authority by diverting decision-making to the federal courts." *Id. quoting Parratt v. Taylor,* 451 U.S. 527, 554 n. 13, 101 S.Ct. 1908, 1922–23 n. 13, 68 L.Ed.2d 420 (1981) (Powell, J., concurring). Accordingly, we reject the Muckways' attempt to bootstrap their state law zoning claim into a federal court action by dressing it in the verbiage of equal protection.

The district court's dismissal of the plaintiffs' complaint for failure to state a claim upon which relief can be granted is AFFIRMED.