**DISCOVERY HOUSE, INC., Plaintiff,**

v.

**CONSOLIDATED CITY OF INDIANAPOLIS, et al., Defendants.**

**No. 2:98 CV 437.**

United States District Court, N.D. Indiana, Hammond Division.

April 1, 1999.

Greg A. Bouwer, Robert P. Kennedy, Spangler, Jennings and Dougherty, PC, Merrillville, IN, for Discovery House, Inc., plaintiff.

John T. Roy, Stephenson, Daly, Morow and Kurnik, Indianapolis, IN, Dale R. Simmons, City of Indianapolis, City–County Legal Division, Indianapolis, IN, for defendants.

## ORDER

MOODY, District Judge.

In the complaint initiating this action plaintiff Discovery House, Inc. alleges that the defendants, the Consolidated City of Indianapolis and the Metropolitan Board of Zoning Appeals of Marion County ("BZA"), intentionally discriminated against Discovery House on the basis of an animus against Discovery House's clientele, when the BZA ruled that Discovery House's proposed drug rehabilitation treatment center to be located at 5626 East 16th Street in Indianapolis (hereinafter, "methadone clinic") was not allowed by applicable zoning regulations. Although Discovery House eventually succeeded in obtaining reversal of this decision via the statutory process available for appealing the BZA's decision to the Indiana state courts, Discovery House seeks damages for the attendant two-year delay during which it could not open the clinic. Discovery House's complaint pleads theories of recovery based on the Equal Protection and Just Compensation clauses of the United States and Indiana Constitutions, section 12132 of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The defendants have filed a motion to dismiss the complaint in which they assert that it fails to state a claim, that they are entitled to absolute judicial immunity, and that Discovery House has

no standing to raise the claims pleaded in the complaint.

Defendants posit that their motion to dismiss Discovery House's complaint must be granted if, accepting the allegations of the complaint as true and drawing all inferences in plaintiff's favor, it would be impossible to prevail under any facts which could be proved consistent with the allegations. Although neither party identifies which subsection of FED.R.CIV.P. 12(b) defendants' motion invokes, this is, of course, the correct standard for defendants' failure-to-state-a-claim argument based on RULE 12(b)(6). *See Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir.1997). Standing, however, is a jurisdictional challenge raised via RULE 12(b)(1). Nevertheless, the same standard applies, but only to the extent the allegations of the complaint go unchallenged: unlike RULE 12(b)(6), the court may resolve factual disputes. *See Retired Chicago Police Assoc. v. City of Chicago*, 76 F.3d 856, 862 (7th Cir.1996). Finally, motions to dismiss raising an immunity defense are analyzed using "a Rule 12(b)(6)–type approach." *Khuans v. School District 110*, 123 F.3d 1010, 1013 n. 2 (7th Cir.1997); *see also Wilson v. Formigoni*, 42 F.3d 1060, 1064 (7th Cir.1994).

## FAILURE TO STATE A CLAIM

The court considers first whether Discovery House's complaint states a claim, for if it does not, it is unnecessary to consider defendants' standing and immunity arguments. *See Jennings v. Emry*, 910 F.2d 1434, 1435 (7th Cir.1990); *Illinois Health Care Assoc. v. Illinois Dept. of Public Health*, 879 F.2d 286, 291 n. 9 (7th Cir.1989).

*Whether Complaint's Allegations are Sufficient to Implicate Municipal Policy*

■ Defendants' first argument is directed to Discovery House's federal claims. The argument rests on three premises. First, that the federal claims, both constitutional and statutory, require proof of a municipal policy or custom that caused the injury complained of. Second, that of the three recognized ways of proving a policy claim, *see Baxter v. Vigo County School*

*Corp.*, 26 F.3d 728, 735 (7th Cir.1994), Discovery House's complaint relies only on the theory that the BZA is a policy-making authority. Third, that the BZA, when it took the actions complained of, acted in a quasi-judicial capacity.

To simplify analysis, the court accepts these three premises as true. On the strength of these initial premises, defendants deliver their masterstroke: because judges are not municipal policy makers, *see, e.g., Woods v. City of Michigan City, Indiana*, 940 F.2d 275, 279 (7th Cir.1991), the BZA, acting in a quasi-judicial capacity, also cannot be considered a municipal policy maker. Thus, Discovery House's complaint fails to state a claim because Discovery House has not been harmed (if it has been harmed at all) by an unlawful municipal policy.

Perhaps the shortest way to explain the flaw in defendants' argument is to quote a portion of the *Black's Law Dictionary* (on which defendants rely to define "quasi-judicial") definition of "quasi:"

> As if; almost as it were; analogous to. This term is used in legal phraseology to indicate that one subject resembles another, with which it is compared, in certain characteristics, but that there are intrinsic and material differences between them.

Blacks Law Dictionary 1245 (6th ed.1990). Thus, the fact that the BZA may act in a quasi-judicial capacity does not make it a judicial body for all purposes. The reason judges are not municipal policy makers is because, in most cases, they are officers of the state, not county officials. *See Woods*, 940 F.2d at 279; *see also, Ward v. Morris*, 895 F.Supp. 116, 118 (N.D.Miss.1995). The BZA, on the other hand, always remains a municipal actor; that is, its members, even if acting in a quasi-judicial capacity, do not transform into state judicial officers.

Reinforcing this conclusion is defendants' complementary argument that the statutory procedure for appealing the BZA's decisions to an Indiana circuit or

superior court, Ind.Code § 36–7–4–1003, proves that the BZA is a judicial actor. In the court's view § 36–7–4–1003 proves the contrary proposition. Under § 36–7–4–1003 an Indiana court has no power to reweigh evidence or substitute its judgment for the BZA; instead it may only find that the BZA acted illegally. *See Crooked Creek Conservation and Gun Club, Inc. v. Hamilton County North Board of Zoning Appeals*, 677 N.E.2d 544, 547 (Ind.Ct.App.1997). In other words, that the court's function is limited to rectifying illegal decisions made by the BZA only confirms the view that the BZA makes final municipal policy.

In sum, the court rejects defendants' argument that the complaint fails to state a claim because its allegations implicate no municipal policy.

*Whether Drug-addicted Individuals Have a Disability Under the ADA and RHA*

■ Discovery House's complaint alleges that defendants discriminated against it because of an animus against drug-addicted individuals. *See, e.g.*, Complaint Par. 24. Defendants argue that the complaint fails to state a claim under the ADA or RHA[1] because drug-addicted individuals are not individuals "with a disability." Section 12210(a) of the ADA provides:

> For the purposes of this chapter, the term "individual with a disability" does not include an individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use.

42 U.S.C. § 12210(a). Relying on cases such as *Shafer v. Preston Memorial Hospital Corp.*, 107 F.3d 274 (4th Cir.1997), finding no ADA violation when employers terminate employees in rehabilitation on account of recent drug use, defendants argue that the potential clients of Discovery House are not "qualified individuals" due to their recent drug use.

For the purposes of the present motion the court will assume this somewhat doubtful proposition is correct. The proposition is doubtful in the present circumstances due to the language of subsections (b)(2) & (c) of § 12210. As relevant here, subsection (b)(2) provides that "[n]othing in subsection (a) of this section shall be construed to exclude as an individual with a disability an individual who ... is participating in a supervised rehabilitation program and is no longer engaging in such [drug] use." The relevant portion of subsection (c) of § 12210 provides that "[n]otwithstanding subsection (a) of this section ... an individual shall not be denied ... services provided in connection with drug rehabilitation on the basis of the current illegal use of drugs." Whether or not employment-decision cases such as *Shafer* are correct, these subsections suggest that judicially-divined meaning of the phrase "currently engaging in the illegal use of drugs" in § 12210(a) should perhaps be different in the context of a governmental decision affecting provision of drug rehabilitation services. Whether the meaning of "currently engaging" varies depending on the context need not be decided at present, however.

Even assuming that the phrase "currently engaging in the illegal use of drugs" would have some application in the context of governmental action impacting the availability of drug rehabilitation services, there is an absence of proof as to two factual predicates necessary for § 12210(a) to apply. First, by its express terms, § 12210(a) operates to exclude current drug users from the definition of individuals "with a disability" only when "the covered entity acts on the basis of such use." Reviewing the pleadings[2] in this case the

---

1. Although defendants address the RHA and ADA in separate sections of their brief, the statutes are materially identical. *See Crawford v. Indiana Dept. of Corrections*, 115 F.3d 481, 483 (7th Cir.1997). This court's decision with respect to the ADA is dispositive of the RHA claim.

2. The court has reviewed both the answer filed July 29, 1998, and the proposed amended answer attached to defendants' motion for leave to file amended answer filed December 30, 1998.

court can find no admission by defendants that the BZA based its zoning decision on the current drug use of Discovery House's potential clients. Second, even if defendants had made this admission, an additional factual problem arises because, as defendants point out, Discovery House's "potential" clients are "as yet unknown." Defendants' brief at 9. Thus, granting defendants' argument would require the court to assume every one of Discovery House's potential and unknown clients to be a recent enough user of drugs so as to be "currently engaging in the illegal use of drugs." On the record at this point the court will not make such a broad assumption. See *Innovative Health Systems, Inc. v. City of White Plains*, 117 F.3d 37, 48 (2nd Cir.1997) ("An inevitable, small percentage of failures should not defeat the rights of the majority of participants in the rehabilitation program who are drug-free and therefore disabled under [the ADA.])" For these reasons, it cannot be said at this stage of the litigation that Discovery House's potential clients are not, as a matter of law, "individual[s] with a disability" within the meaning of the ADA or the RHA.

*Whether Discovery House is a Recipient of a "Service" under the ADA*

■ Section 12132 of the ADA provides that qualified individuals with a disability shall not be "excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Defendants, citing a number of other district court decisions which have so held,[3] con-

tend that zoning is not an activity (nor a service or program) within § 12132.

The court's initial reaction to this argument is that although zoning is not a service, program or activity in the ordinary sense as, for example, garbage collection would be, hand-wringing over the definition of "activity" is unnecessary because the final portion of § 12132 states: "no qualified individual with a disability shall ... be subjected to discrimination" by a public entity. Because the parties have not argued the applicability of the final clause in § 12132, however, and instead focussed their arguments on interpretation of the term "activity," the court moves on.[4]

All of the decisions on which defendants rely that have held that "zoning" is not a governmental "service, program or activity" are district court decisions. The only circuit court to have addressed the issue, the Second Circuit in Innovative Health Systems, concluded that these decisions were wrong and held that zoning is an "activity" within § 12132. *Innovative Health Systems*, 117 F.3d at 44–46. Although a Second Circuit decision is not binding on this court and so not entitled to automatic deference, it should be followed if possible to avoid unnecessary inter-circuit conflict. See *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir.1987). Although defendants address *Innovative Health Systems*, they fail to persuade this court that the Second Circuit erred.

*Innovative Health Systems'* explication of the reasons that zoning is an "activity" is quite brief. For the purposes of the present discussion, it suffices to say that the court reasoned that the plain meaning of the word "activity" would include any

---

3. Citations to all of the cases can be found in *Innovative Health Systems*, 117 F.3d at 45 n. 10.

4. In par. 17 of its complaint Discovery House pleads that "[z]oning is an activity of the defendants; Discovery House participates in and benefits from zoning laws of the defendants." In *United States v. City of Charlotte*, 904 F.Supp. 482, 484 (W.D.N.C.1995), the court found a similar pleading choice to limit plaintiff to a legal theory based on the first

clause of § 12132, and dismissed the complaint, holding that zoning is not an activity or service under § 12132. In this circuit, however, at the motion to dismiss stage the complaint should not be read as limiting the legal theories available to plaintiff. *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997) ("A complaint must narrate a claim.... Having specified the wrong done to him, a plaintiff may substitute one legal theory for another without altering the complaint.")

normal governmental function; that the final phrase in § 12132 is a "catch-all ... that should avoid the very type of hair-splitting" involved in arguing that zoning is not subject to § 12132; and that the legislative history and administrative materials include statements such as "[T]itle II applies to anything a public entity does. . . . All governmental activities of public entities are covered." *Innovative Health Systems*, 117 F.3d at 45 (citing 28 C.F.R. pt. 35, app. A at 456 (1996)).

Defendants' argument that *Innovative Health Systems* is wrong is also quite brief. Defendants argue that *Innovative Health Systems* divorced the term activity from its context, and instead

> simply held that activity is everything a local government could possibly do. However, § 12132 states that no individual shall be excluded from "participation in or be denied the benefits of" the activities of a public entity. . . . [This section] does not mean that because an individual enjoys qualified disabled status that a municipality must always provide benefits to such individuals ... or to provide activities beyond that which it provides non-qualified members of its community."

Defendants' Memorandum at 16. To state this argument in terms that the court understands to be its essence, defendants are arguing that the ADA does not entitle Discovery House to a favorable zoning result (i.e., that a particular zoning result is not an "activity"), and because Discovery House participated in the zoning appeals process (that process being the "activity"), Discovery House has not been denied participation in or benefits of a government activity.

This argument is unpersuasive because it mischaracterizes Discovery House's claim. The pith of the claim is not that Discovery House was denied a particular zoning result, it is that an invidious discriminatory animus produced the result and so Discovery House was denied the benefit of an activity, *i.e.*, a discrimination-free result from a discrimination-free pro-

cess. *See Innovative Health Systems*, 117 F.3d at 48–49 ("claim is not premised on the denial of the right to participate in the zoning approval process. Rather, ... [on being] denied the benefit of having the city make a zoning decision without regard to [disability.]") Put another way, perhaps participation in a zoning appeals process where the outcome is dictated by discrimination is not participation at all, and so is a situation where the plaintiff is denied participation in an activity conducted by a public entity.

In sum, this court finds *Innovative Health Systems* persuasive, and will not dismiss the present suit on the basis that the zoning result complained of did not deny Discovery House the benefit of an "activity."

*Whether Complaint Pleads Constitutional Right Cognizable via Equal Protection Clause*

Relying on *Muckway v. Craft*, 789 F.2d 517 (7th Cir.1986), defendants contend that because the equal protection clause is not a source of substantive rights, a state's failure to enforce its own laws— here the BZA's failure to properly apply its zoning ordinance—cannot be the basis of an equal protection claim *See Muckway*, 789 F.2d at 522–23. This interpretation of *Muckway* is an oversimplification, however, which omits half—an important half— of the court's analysis.

In *Muckway* the plaintiffs alleged a denial of equal protection by officials of La-Porte County, Indiana, who refused to enforce a zoning ordinance requiring a junkyard adjacent to the plaintiffs' property to close. The Seventh Circuit held that the complaint failed to state an equal protection claim for two reasons. First, the reason defendants in the present case rely on: that the right to receive the benefits of a zoning ordinance are secured solely by state law, not by a substantive federal right. *See Muckway*, 789 F.2d at 523. Second, however, and the salient point that defendants ignore, that the plaintiffs had not pleaded that the zoning authorities were motivated by intentional

discrimination with the attendant result of impermissible classification. *See id.* *Muckway* expressly recognized that a neutral state law can serve as the basis for an equal protection claim if an adminstrative decision with respect to the law singles out a particular group for disparate treatment. *See id.* at 519–20 (*citing Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir.1982)); *see also City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 446–47, 105 S.Ct. 3249, 3258 87 L.Ed.2d 313 (1985) ("some objectives— such as 'a bare ... desire to harm a politically unpopular group,' [ ]—are not legitimate state")(internal citation omitted); *Olech v. Village of Willowbrook,* 160 F.3d 386, 388 (7th Cir.1998) ("[s]tanding by itself ... uneven law enforcement ... constitutionally innocent" (emphasis added)).

Discovery House's complaint alleges that the defendants "discriminated against Discovery House because of its treatment of and association of [sic—probably should be 'with'] individuals with disabilities" and that the defendants' interpretation of the zoning ordinance was "arbitrary and the ordinance was applied and enforced with a discriminatory intent and purpose." Complaint, par. 32, 33. These allegations are sufficient to state an equal protection claim.

*Whether Action for Damages Lies Based on Equal Protection Clause of Indiana Constitution*

■ Defendants argue that Indiana has no statutory analog to 42 U.S.C. § 1983 and no judicially-created remedy like that in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Thus, Indiana does not recognize a claim for damages based solely on a violation of the Indiana Constitution. The only authority defendants cite for this proposition is *Bailey v. Washington Theatre Co.,* 218 Ind. 513, 34 N.E.2d 17, 19–20 (1941), which is inapplicable at the very least because it contains no discussion of the Indiana Constitution.

Although the court has been unable to find any cases that specifically address the argument made by defendants—that Indiana does not recognize a "constitutional tort" via an analog to § 1983 or *Bivens* —in more recent times (than *Bailey* ) the Indiana Supreme Court has implicitly accepted that a party may sue for damages resulting from a violation of the Indiana Constitution. *See Bayh v. Sonnenburg,* 573 N.E.2d 398 (Ind.1991). Lower Indiana courts have held that actions for damages will lie for a violation of the Indiana Constitution or assumed that to be the case. *See, e.g., Hilburt v. Town of Markleville,* 649 N.E.2d 1036, 1041 (Ind.Ct.App.1995); *Orr v. Sonnenburg,* 542 N.E.2d 201, 205 (Ind.Ct.App.1989).

Based on cases such as those cited in the preceding paragraph, it is this court's duty to decide this issue as it believes the Indiana Supreme Court would, were it to do so. *Cf. Kutsugeras v. AVCO Corp.,* 973 F.2d 1341, 1346 (7th Cir.1992). Because this court believes the Indiana Supreme Court would recognize a claim for damages based on a violation of the Equal Protection Clause of the Indiana Constitution, Article I, § 23, Discovery House's claim for damages based thereon will not be dismissed at this stage of the litigation.[5]

*Whether Just Compensation Clause Claims are Premature*

■ Paragraph 34 of Discovery House's complaint alleges that defendants' actions constituted an unjust taking of Discovery House's interest in its property without compensation in violation of the Just Compensation Clause of the Fifth Amendment of the United States Constitution and Article I, § 21[6] of the Indiana

---

5. Indiana's Equal Protection Clause is not congruent with the Equal Protection Clause of the United States Constitution, however, and there may be other reasons why this claim will not survive until trial. *See Collins* *v. Day,* 644 N.E.2d 72, 75 (Ind.1994); *Palin v. Indiana State Personnel Dept.,* 698 N.E.2d 347, 353–54 (Ind.Ct.App.1998).

6. Misidentified in the complaint as Article I, § 20.

Constitution. Defendants argue that these claims are not ripe for judicial review until after Discovery House pursues a suit for inverse condemnation in the Indiana State courts.

Discovery House's response to this argument is nonsensical:

Discovery House claims that the Metro BZA could not legally take Discovery House's interest in the real estate at 5626 East 16th Street. The question is not how much compensation should be paid, but whether the Metro BZA could take the action at all.

Plaintiff's Brief at 27. While this might all be true with respect to Discovery House's ADA, Rehabilitation Act and Equal Protection claims, it is Discovery House that has chosen to plead and pursue, *as an alternative legal theory* of recovery, a takings claim. Discovery House ignores the distinctions between the alternative legal theories pleaded in its complaint.

Having chosen to plead an unjust takings theory, Discovery House must abide by the law applicable to that theory. Discovery House's takings claim is not ripe because Discovery House has not brought an inverse condemnation suit. *See Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 196–97, 105 S.Ct. 3108, 3121–22, 87 L.Ed.2d 126 (1985); *Himelstein v. City of Fort Wayne, Indiana,* 898 F.2d 573, 576 (7th Cir.1990).

The same is true of Discovery House's takings claim under the Indiana Constitution. The claim had to be raised before the BZA and then in Discovery House's appeal to the state trial court. *See Board of Zoning Appeals of the City of New Albany v. Koehler,* 244 Ind. 504, 194 N.E.2d 49 (1963); *see also Impink v. City of Indianapolis,* 612 N.E.2d 1125, 1127 (Ind.Ct.App.1993) (dismissing takings claim under United States and Indiana Constitution because of failure to pursue inverse condemnation remedy).

Because Discovery House has not pursued an inverse condemnation remedy in the Indiana state courts, Count IV of its complaint, alleging an unjust taking in violation of the Fifth Amendment of the United States Constitution and Article I, § 23 of the Indiana Constitution, is dismissed.

## IMMUNITY

■ Defendants' argue that absolute judicial immunity bars prosecution of this lawsuit. This argument is based on defendants' underlying argument that the BZA, when deciding zoning appeals, acts in a quasi-judicial capacity. Even accepting this premise and the next step in defendants' argument, that those acting in a quasi-judicial capacity are entitled to absolute immunity, this argument is a red herring. Whether or not the *members* of the BZA are entitled to judicial immunity has no bearing on the merits of this action as presently pleaded. Absolute judicial immunity is an individual defense personal to the judicial actor. *See Newman v. State of Indiana,* 129 F.3d 937, 941 (7th Cir.1997). Plaintiff has not named the individual members of the BZA as defendants in this action, only municipal entities, making the defense of absolute judicial immunity irrelevant:

The official acts of municipal policy makers are acts of the municipality for purposes of section 1983 liability. And the municipality's liability for such acts extends to acts for which the policy-making officials themselves might enjoy absolute immunity because the acts were legislative or judicial in character.

*Reed v. Village of Shorewood,* 704 F.2d 943, 953 (7th Cir.1983) (citations omitted.)

Because judicial immunity is a defense available to individuals only, the present lawsuit will not be dismissed on the ground of judicial immunity.

## STANDING

■ Having come this far, the court addresses defendants' main argument: that Discovery House's suit is an attempt to vindicate the rights of third parties—the drug-addicted individuals comprising Discovery House's clientele—and Discovery House does not have associational standing

to represent those third parties. This challenge to Discovery House's standing does not question the *bona fides* of the suit under the "case or controversy" requirement of Article III of the Constitution.[7] Instead, defendants raise the issue of prudential limitations on standing; that is, whether Discovery House's claim, whether pursued under the ADA, the RHA or the Equal Protection Clause, is really a claim that may only be brought by Discovery House's potential clientele.

■ Generally, litigants may not raise claims based on another person's legal rights. *See Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Congress may expressly override this prudential limitation, however, by a statute granting a third party a cause of action, which is often done to allow a party injured by a violation of a civil rights, consumer protection, or environmental statute to bring suit to redress the violation even when that party is not within the class of persons normally intended to benefit from the statute. *See Family & Children's Center, Inc. v. School City of Mishawaka,* 13 F.3d 1052, 1059–60 (7th Cir. 1994). Even in the absence of such a Congressional mandate, however, the prudential limitation on third-party standing yields when prudence so dictates, prudence being exercised by reference to three factors: (1) the relationship between the litigant and the person(s) whose rights

are being asserted; (2) the ability of that person(s) to advance his or her own legal rights, and (3) the impact of the litigation on third-party interests. *See Shanahan v. City of Chicago,* 82 F.3d 776, 780 (7th Cir.1996).

Defendants assert that Discovery House's claims under the ADA[8] are brought under only Part A of the public services subchapter the ADA, 42 U.S.C. §§ 12131–12134 ("Subchapter II"), and, as Discovery House does not argue otherwise in response, the court proceeds accordingly. The enforcement provision of Subchapter II grants a cause of action to "any person alleging discrimination on the basis of disability in violation of section 12132 of this title." 42 U.S.C. § 12133. Defendants make the same argument[9] that was made—and rejected—in *Innovative Health Systems,* 117 F.3d at 47, that "person" in § 12133 does not include an entity (and, although not argued, by logical implication, an individual) seeking redress for its own injuries caused by discrimination motivated by an animus against another individual or individuals with whom the entity has some relationship.

The argument flows from differences in the drafting of Subchapters I and III of the ADA, which, unlike Subchapter II, include examples defining discrimination to include conduct directed at a person on account of another person's disability. Subchapter I, prohibiting discrimination in

---

7. Because standing is a jurisdictional matter, however, the court should independently assess the Article III standing requirements. *See Family & Children's Center, Inc. v. School City of Mishawaka,* 13 F.3d 1052, 1058 (7th Cir.1994). The court is satisfied that the allegations of Discovery House's complaint (that it expended money improving a building in reliance upon the building commissioner's assurances that the proposed use was allowed in by the applicable zoning classification) are sufficient to demonstrate an actual injury to plaintiff, traceable to defendants' conduct, that may be remedied by a favorable court decision.

8. Defendants discuss the ADA and the RHA separately. As noted *infra* at p. 1001 n. 1, the ADA and the RHA are materially identical,

and so the court's decision regarding standing under the ADA is dispositive of the issue under the RHA. *See Crawford v. Indiana Dept. of Corrections,* 115 F.3d 481, 483 (7th Cir.1997)

9. Although this section of defendants' brief is entitled "Discovery House is Not a Qualified Individual With a Disability," defendants do not expressly argue that Congress, when using "any person" in § 12133 really meant "any qualified individual with a disability." This would, however, be the logical result of defendants' argument, and seem contrary to Congress's choice to prohibit discrimination against "qualified individual[s] with a disability" in § 12132 but in the immediately following section to allow any "person" to bring suit for a violation of § 12132.

employment, defines discrimination to include the denial of employment opportunities to a "qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). Subchapter III, prohibiting discrimination in public accomodation, defines discrimination to include denial of goods, services, etc. to "an individual or entity because of the known disability of an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E). The definition of discrimination in Subchapter II, found at 42 U.S.C. § 12132, contains no similar "relationship or association" provision.

As did the defendants in *Innovative Health Systems,* defendants in the present case argue that this omission evinces Congress's purposeful intent to deny third-party standing in cases brought under Subchapter II. *Innovative Health Systems* rejected this argument, using various means of statutory construction to decide that Congress meant for all three subchapters of the ADA to prohibit the same discriminatory conduct. *Innovative Health Systems,* 117 F.3d at 47–48. In one paragraph at page 12 of their brief defendants perfunctorily argue that *Innovative Health Systems* was decided wrongly and should not be followed.

This court disagrees, and arrives at the same holding as *Innovative Health Systems,* but by employing slightly different reasoning. First, as held in *Innovative Health Systems,* the language used in § 12133, the enforcement provision of Subchapter II, which allows "any person alleging discrimination" to bring suit, shows that Congress intended to grant standing to the limits of Article III. *Innovative Health Systems,* 117 F.3d at 47. The plaintiff in this case is a corporate entity, but corporations are persons under the law. Had Congress intended "any person" in § 12133 to actually mean "a qualified individual with a disability," then Congress surely would have used that phrase as it

did in § 12132, as noted *infra* at p. 1006 n. 9. As a result, the unambiguous language used in § 12133 must be given its plain meaning, making further statutory analysis unnecessary. *See Family & Children's Center,* 13 F.3d at 1060–61.

Alternatively, this court agrees with statutory interpretation in *Innovative Health Systems,* explaining why the three subchapters of the ADA should be interpreted *in pari materia,* despite the omission of a "relationship or association" provision in Subchapter II. To put that analysis in a nutshell, the "relationship or association" provisions in Subchapters I and II are found in subsections illuminating, not restricting, each subchapter's general definition of discrimination. Because each subchapter's general definition of and rule prohibiting discrimination is in substance the same, see 42 U.S.C. §§ 12112(a), 12132(a) & 12182(a), the same class of litigants should have standing under each of the three subchapters.

 This conclusion also leads the court to conclude that Discovery House has standing under the Equal Protection Clause. Defendants have argued the issue on the theory that Discovery House lacks "associational standing" to represent the interests of its prospective clients. Because Discovery House is seeking redress for its own injury, however, "associational standing" is not really the right issue. *Cf. Legal Aid Society of Hawaii v. Legal Services Corp.,* 145 F.3d 1017, 1030–31 (9th Cir.1998). Under the ADA and RHA, Discovery House is essentially treated as a member of the discriminated-against group. The denial of equal treatment to Discovery House on the basis of membership in that group, along with its injury-in-fact, gives Discovery House standing. *Cf. Associated General Contractors of America v. City of Jacksonville,* 508 U.S. 656, 666, 113 S.Ct. 2297, 2303, 124 L.Ed.2d 586 (1993).

Even if this is not the case, and Discovery House's Equal Protection challenge should be viewed as based on the rights of

its prospective clients, as already noted above, judicially-created prudential limitations on third-party standing yield in appropriate cases, based on three factors: (1) the relationship between the litigant and the person(s) whose rights are being asserted; (2) the ability of that person(s) to advance his or her own legal rights, and (3) the impact of the ligation on third-party interests. *See Shanahan*, 82 F.3d at 780.

As to the first consideration, the plaintiff in this case and its clients have a special relationship, somewhat analogous to a doctor-patient relationship, weighing in favor of allowing standing. *See Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). The second factor also weighs in favor of standing. In arguing that Discovery House lacks standing, defendants argue that it proposes a "treatment facility for as yet unknown potential clients." Brief at p. 9. Obviously, Discovery House has a better ability and a greater incentive to litigate the merits of this action than does the group of "unknown potential clients." Although the third factor does not favor exercising jurisdiction, as Discovery House has already prevailed in the state appeals process allowing its clinic to open, the three factors overall tip in favor of Discovery House's having standing.

For these reasons, this court holds that Discovery House has standing to bring its claims under the ADA, RHA and Equal Protection Clause.

## CONCLUSION

Based on the foregoing discussion, the court **GRANTS** defendants' motion to dismiss count IV of Discovery House's complaint; otherwise, the motion to dismiss is **DENIED.**

**SO ORDERED.**